IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Elnor Whitehead, as EXECUTRIX of the Estate of John Whitehead, | : Case No. 08 Civ. 00192 (LDD) |
| Plaintiff, | : |
| v. | : |
| THE PULLMAN GROUP, LLC, | : |
| Defendant. | : |

# DEFENDANT'S MOTION TO COMPEL ARBITRATION
# AND STAY ACTIONS PENDING RESOLUTION
# OF THE ARBITRATION PROCEEDING

PLEASE TAKE NOTICE that, pursuant to the Federal Arbitration Act, 9 U.S.C. §1 et seq., Defendant THE PULLMAN GROUP, LLC ("The Pullman Group") hereby moves this Court for an Order (i) compelling Plaintiffs to arbitrate the subject matter of these related actions before the auspices of the American Arbitration Association, (ii) staying these Actions pending the resolution of such Arbitration Proceeding; and (iii) granting Defendant such other and further relief as this Court deems just and proper.

Dated: January 31, 2008

TIMONEY KNOX LLP

By: _____
Scott H. Wolpert, Esquire
400 Maryland Drive
P.O. Box 7544
Fort Washington, PA 19034
(215) 540-2634

-and-

232507-1

1

        Brian D. Caplan
        Jonathan J. Ross
        CAPLAN & ROSS, LLP
        100 Park Avenue, 18th Floor
        New York, New York 10017
        212-973-2376

        Attorneys for Defendant,
        THE PULLMAN GROUP, LLC

To:    Martin A. Heckscher, Esq.
       Timothy J. Holman, Esq.
       Heckscher, Teillon, Terrill & Sager, P.C.
       100 Four Falls, Suite 300
       West Conshohocken, PA 19428
       (610) 940-4170

       Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Elnor Whitehead, as EXECUTRIX of the Estate of John Whitehead,<br><br>Plaintiff,<br><br>v.<br><br>THE PULLMAN GROUP, LLC,<br><br>Defendant. | Case No. 08 Civ. 00192 (LDD) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## INTRODUCTION

This action arises out of a written agreement dated May 2, 2002 (the "Agreement") between the songwriters and musical performers, Gene McFadden ("McFadden") and John Whitehead ("Whitehead"), professionally known as McFadden & Whitehead, on the one hand, and The Pullman Group, LLC ("Pullman") on the other. While both McFadden and Whitehead are now deceased, the Executrix of each of their Estates, Barbara McFadden and Elnor Whitehead, respectively, (hereinafter collectively referred to as "Plaintiffs") commenced the instant actions, as Petitions in the Orphans' Court for the State of Pennsylvania, seeking declaratory relief challenging the validity of the Agreement on various grounds. Pullman, a Delaware limited liability company which had its principal offices in New York, at the time of execution of the agreement and for years thereafter, and at no time had offices in Pennsylvania, timely removed those actions to this Court on the grounds of diversity jurisdiction.[1]

McFadden and Whitehead were hit artists and songwriting team of the 1970's R&B and pop music industry, writing, producing and/or performing numerous hits. The Agreement relates to McFadden and Whitehead's royalty and other interests in those musical compositions and sound recordings, which are exploited worldwide through phonorecords, film and television properties, radio broadcasts and other performances and that generate substantial income throughout the world. In the Agreement, Pullman obtained the valuable and exclusive right to purchase McFadden and Whitehead's copyright, publishing, co-publishing, and writers' share of royalty and other interests on those songs and performances among other rights. Further, Pullman obtained a "right of first refusal" by which Pullman could match any such offers made

---

[1] As Pullman is moving for identical relief in both related actions currently pending before this Court, this memorandum addresses both actions simultaneously.

1

by third parties. As the Complaint acknowledges, prior to October of 2007 such a third party offer was made, but not tendered to Pullman.

Dispositive of the instant motion, the Agreement also expressly and unambiguously requires arbitration of any controversy or claim arising out of or relating to the Agreement, such as Plaintiffs' claims here, which unquestionably arise out of or are related to the Agreement. Accordingly, Pullman respectfully requests, pursuant to the pertinent provisions of the Federal Arbitration Act, that an Order be entered compelling Plaintiffs to arbitrate the claims and staying further proceedings in this Court pending the resolution of that arbitration.

## STATEMENT OF FACTS

Plaintiffs are the respective widows and Executrices of the Estates of Gene McFadden, who died in 2004, and John Whitehead who died in 2006. McFadden and Whitehead were a songwriting, production and recording duo whose works are featured on albums by numerous R&B artists, including The O'Jays, Melvin and the Blue Notes as well as their own albums, and numerous others, and in film scores and TV cues exploited throughout the United States and abroad. Their signature hit "Ain't No Stoppin' Us Now," reached #1 on the R&B charts in 1979. This song, as well as "Backstabbers" by The O'Jays, "I'll Always Love My Mama," "Wake Up Everybody," and countless others by McFadden and Whitehead, continue to generate substantial income throughout the United States and abroad. See, Declaration of David Pullman in support of this motion dated January 25, 2008 ("Pullman Decl."), ¶ 2 and Exs. B and C annexed thereto. Plaintiffs are two of the heirs to their husbands' interests in their musical works, including their royalty interests generated from the exploitation of their musical works worldwide. See Complaints, ¶¶ 1, 6.

2

By agreement dated May 2, 2002, McFadden and Whitehead granted to Pullman, *inter alia*, the exclusive right to purchase their royalty and other interests in their musical works. Pullman Dec. ¶ 2-4, and Ex. A annexed thereto (a fully executed copy of the Agreement). The interests governed by the Agreement include, but are not limited to, Plaintiffs' royalty or income interests in the musical works "throughout the world." Pullman Decl., ¶ 4; Ex. A, ¶ 1.

Importantly, in addition to granting Pullman the right to acquire the assets pursuant to the financial terms offered in the Agreement, the Agreement also grants Pullman a 'right of first refusal,' providing Pullman with the right to match any third-party offers made to McFadden and Whitehead for the assets. Finally, and dispositive of the instant motion, the Agreement also contains an arbitration clause that provides that any all disputes arising out of or related to the Agreement must be resolved through arbitration.

Specifically, ¶ 11 of the Agreement states:

> The parties agree that any controversy or claim arising out of or relating to this agreement, its breach or any of the transactions or services contemplated herein shall be settled by arbitration before a single arbitrator (or a panel of three arbitrators if the amount at issue exceeds $250,000) in New York County, State of New York, in accordance with the rules of the American Arbitration Association ...

Pullman Dec., Ex. A, ¶ 11.

Pursuant to the Agreement, and with the cooperation of McFadden and Whitehead, Pullman conducted, at its own expense, its due diligence regarding the transaction under the terms of the Agreement. For reasons not germane to the instant motion (which only seeks to place the parties' disputes before the proper forum), the transaction has not yet closed.[2]

---

[2] Once this dispute is placed before the proper forum, Pullman will likely assert various counterclaims arising from McFadden's and Whitehead's failure or refusal to consummate the transaction.

3

In or about October 2007, Pullman then became aware that a third party had in fact made an offer to purchase the rights that are the subject of the Agreement. Accordingly, Pullman asserted his exclusive right to purchase the assets under the Agreement. Plaintiffs responded by improperly commencing these actions in the Orphans Court, in contravention of the parties' arbitration agreement, attacking the validity of the Agreement as a whole on various grounds.[3]

## ARGUMENT

### POINT I

### THE ARBITRATION AGREEMENT SHOULD BE ENFORCED AND THE ACTION STAYED

The proper forum to hear the parties' disputes is in arbitration under the auspices of the American Arbitration Association. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), Plaintiffs are required to abide by their written agreement to arbitrate their claims. 9 U.S.C. § 4. The FAA further requires a stay of these actions pending completion of that arbitration. 9 U.S.C. § 3.[4]

#### A. The FAA Applies to the Arbitration Provision in the Agreement

Pursuant to Section 2 of the FAA, 9 U.S.C. § 2, written agreements to arbitrate controversies arising out of transactions involving commerce are valid and enforceable:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof,

---

[3] Plaintiffs' challenge to the validity of the Agreement is largely based upon the disingenuous claim that McFadden and Whitehead never signed it. A fully executed copy of the Agreement (which is otherwise identical to the partially executed copy of the Agreement attached to Plaintiffs' Complaints) is annexed as Exhibit A to the accompanying Declaration of David Pullman.

[4] Even were the arbitration agreement governed by Pennsylvania law, the result would be the same. Like the FAA, Pennsylvania law provides for an order compelling arbitration and for a stay of the litigation pending completion of the arbitration. 42 Pa.C.S.A. § 7304.

> or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' -- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *The Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 2040, 156 L.Ed.2d 46 (2003), *citing Allied-Bruce Terminix Cos., v. Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 839, 130 L.Ed.2d 753 (1995). Since the FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 2526, 96 L.Ed.2d 426 (1987), "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'." *Citizens Bank*, 539 U.S. at 56, 123 S. Ct. at 2040, *citing Allied-Bruce Terminix Cos.*, 513 U.S. at 273, 115 S. Ct. at 839). If an organization engages in business across state lines, has any portion of its assets generated as a result of any activity across state lines, or engages in any business that may be regulated by the Congress pursuant to powers granted in the Commerce Clause, then FAA jurisdiction is the appropriate mechanism for settling a dispute where a valid arbitration agreement has been executed. *Citizens Bank*, 539 U.S. at 57-58, 123 S. Ct. 2040-41.

The Agreement at issue here is clearly, "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Among other things, the Agreement concerns the parties' rights and obligations in respect of royalty income earned from the exploitation of musical works across the United States and abroad, including income related to performances of the songs throughout the country and abroad, sales of recordings throughout the country and abroad, and myriad other nationwide uses of the musical works. Pullman Decl., ¶ 2 and Exh. A, ¶ 1; *see also* Exh. C and

5

Complaint, ¶ 7-9 (noting that McFadden and Whitehead have interests in hundreds of musical compositions exploited throughout the world). Accordingly, the FAA applies to the arbitration provision in the agreement.

### B. The FAA Requires An Order Compelling Arbitration

Under the FAA and Supreme Court precedent, this Court is charged with enforcing arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Section 4 of the FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. This provision must be read to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25, 111 S. Ct. at 1651, *quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)). *See also EEOC v. Waffle House*, 534 U.S. 279, 289, 122 S. Ct. 754, 762, 151 L.Ed.2d 755 (2002) ("We have read these provisions to manifest a liberal federal policy favoring arbitration agreements.") (citations omitted). Additionally, the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Financial Corp.-Alabama, v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 522, 148 L.Ed.2d 373 (2000). Indeed, the Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court and mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L.Ed.2d 158 (1985).

Accordingly, under the FAA, the court's role is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In this connection, the Court's task is limited to solely determining whether a valid agreement to arbitrate has been reached, leaving to the arbitrator all questions as to the validity or enforceability of the contract in which the arbitration clause is found. In accordance with the statutory language, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 1806, 17 L.Ed.2d 1270 (1967). If there is an agreement to arbitrate, then it is treated as severable from the underlying contract and must be enforced, such that the arbitrator, and not the court, determines any claim that the contract is the result of fraud, coercion, duress or some other challenge to the contract as a whole.

In *Prima Paint*, the parties entered into a consulting contract, which included a promise to arbitrate any controversy arising out of the contract. When one party sued to have the overall contract rescinded, alleging fraud in the inducement, the other party brought a motion to stay the proceedings and compel arbitration. Resolving a split among circuits, the Supreme Court held that a fraudulent inducement claim, which goes to the entire contract, as opposed to the arbitration provision itself, must be resolved by an arbitrator:

> [I]f the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint,* 388 U.S. 395, 403-404.

7

In 2006, the Supreme Court unequivocally reaffirmed *Prima Paint's* rationale, holding that all questions concerning the validity of the contract as a whole, as opposed to the validity of the arbitration clause, are to be determined in arbitration:

> It is true, as Respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions. We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-449, 126 S. Ct. 1204, 1210, 163 L.Ed.2d 1038 (2006).

The Agreement at Issue Contains a Valid Agreement to Arbitrate

A written agreement to submit claims to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. When deciding whether a valid arbitration agreement exists, courts should apply ordinary state-law principles that govern the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Under Pennsylvania law, to determine whether a valid agreement has been made, the court looks to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3rd Cir. 2002).

As noted above, however, in the context of a motion to compel arbitration, these elements of contract formation are applied solely to the arbitration provision itself. Moreover, when, as here, "both parties have agreed to be bound by arbitration, adequate consideration exists and the

8

arbitration agreement should be enforced. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3rd Cir. 2002). Accordingly, there is no question here that the arbitration agreement, agreed to by all parties and which obliges both sides to submit to arbitration under specified terms, is valid and should be enforced.

In this case, while Plaintiff seeks to set aside the agreement based on claims attacking the validity of the agreement in its entirety, the *Prima Paint* doctrine requires that these claims all be decided by the arbitrator. The Court need not, indeed cannot, determine whether the agreement is void or voidable due to lack of consideration or other infirmity, but rather, "the entire controversy must be referred to the arbitrator, including the validity of the contract," *Muh*, 540 F.2d at 972, in accordance with the "unmistakably clear congressional purpose that the arbitration procedure," under the FAA, "be speedy and not subject to delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404, 87 S. Ct. at 1806.

### 1. The Arbitration Agreement Covers Plaintiff's Claims

There is likewise no question that Plaintiffs' claims are within the scope of the arbitration agreement, which determination must also be made with a "healthy regard for the federal policy favoring arbitration ... [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25, 103 S. Ct. at 941. Hence, "an order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (citations omitted).

In this case, the arbitration agreement broadly applies to "any controversy or claim arising out of or relating to this agreement." Exh. A, ¶ 11. The broad scope of this provision indisputably brings Plaintiff's claims within its reach. In fact, to require arbitration, the plaintiff's factual allegations need only "touch matters" covered by the contract containing the arbitration clause. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 624, n.13, 105 S. Ct. 3346, 3352, n.13, 87 L.Ed.2d 444 (1985) (noting that "insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, [we] properly resolve[] any doubts in favor of arbitrability"); *see also Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987) (holding that if factual allegations touch matters covered by agreement, then claims must be arbitrated)). Plaintiffs' allegations here certainly "touch matters" arising out of or relating to the Agreement.

### C. The FAA Requires An Order Staying This Action Pending Resolution of The Arbitration Proceeding.

Section 3 of the FAA, 9 U.S.C. § 3, mandates the stay of any litigation that contravenes an arbitration agreement. *Gilmer*, 500 U.S. at 24, 111 S. Ct. at 1651. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such an arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement .... 9 U.S.C. § 3.

The stay of proceedings under 9 U.S.C. § 3, is mandatory to protect the integrity of the arbitration process. Accordingly, this action should be stayed pending the resolution of the arbitration proceeding.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this motion be granted in its entirety and that an Order be entered compelling arbitration; staying these actions, and granting Defendant such other and further relief as this Court deems just and proper.

Dated: January 31, 2008

                                          TIMONEY KNOX LLP

                                          By: _____
                                              Scott H. Wolpert, Esquire
                                              400 Maryland Drive
                                              P.O. Box 7544
                                              Fort Washington, PA 19034
                                              (215) 540-2634
                                                        -and-
                                              Brian D. Caplan
                                              Jonathan J. Ross
                                              CAPLAN & ROSS, LLP
                                              100 Park Avenue, 18th Floor
                                              New York, New York 10017
                                              212-973-2376

                                              Attorneys for Defendant,
                                              THE PULLMAN GROUP, LLC

To:    Martin A. Heckscher, Esq.
        Timothy J. Holman, Esq.
        Heckscher, Teillon, Terrill & Sager, P.C.
        100 Four Falls, Suite 300
        West Conshohocken, PA 19428
        (610) 940-4170

        Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Elnor Whitehead, as EXECUTRIX of the Estate of John Whitehead, <br><br> Plaintiff, <br><br> v. <br><br> THE PULLMAN GROUP, LLC, <br><br> Defendant. | Case No. 08 Civ. 00192 (LDD) |

## CERTIFICATE OF SERVICE

I, Scott H. Wolpert, Esquire hereby certify that true and correct copies of Defendant, The Pullman Group, LLC's Motion to Compel Arbitration and Stay Actions Pending Resolution of the Arbitration Proceeding, Memorandum of Law in support thereof and Declaration of David Pullman have been duly served upon Plaintiff's counsel, Martin A. Heckscher, Esquire and Timothy Holman, Esquire, via United States first-class mail on January 31, 2008.

TIMONEY KNOX LLP

By: _____
Scott H. Wolpert, Esquire
Attorney for Defendant

12